# Richmond.

## TYLER, BY &C. V. CHESAPEAKE & OHIO R. R. CO.

### November 10th, 1891.

1. COURTS—*Juries—Their provinces—New trial.*—In Virginia questions of law, such as the admissibility of evidence, are for the court. Questions of fact, such as the weight of evidence, are for the jury. When evidence is *parol*, any expression of opinion by the court as to weight, effect, or sufficiency of the evidence, or any assumption of a fact as proved, will be an invasion of the province of the jury, for which a verdict will be set aside, and a new trial awarded.

2. INSTRUCTIONS—*New trial—Case at bar.*—Section-master, going on hand-car to load scrap iron, allowed the plaintiff to go along if he would assist. On return hand-car collided with a train, injuring plaintiff, who sued the company. At trial the court instructed the jury as follows: "The court, being of opinion that it could not be fairly inferred from the testimony that plaintiff was either a passenger or an employee of the company, and that it was fairly inferrable that he was aware of the rules of the company prohibiting persons from riding on the hand-cars," &c.;

HELD:

Such an invasion of the province of the jury as entitled plaintiff to a new trial.

Error to judgment of circuit court of Augusta county, rendered November 22d, 1890, in an action of trespass on the case, wherein the plaintiff in error, Charles Jeter Tyler, an infant of seventeen years of age, by his next friend, was plaintiff, and the Chesapeake & Ohio Railroad Company was defendant. Opinion states the case.

*T. C. Elder* and *G. M. Cochran*, for plaintiff in error.

*R. L. Parrish* and *Wm. J. Robertson*, for defendant in error.

LACY, J., delivered the opinion of the court.

Upon the trial a demurrer was sustained by the court to the fifth count of the plaintiff's declaration, and the same overruled; as to the other four counts of the declaration, evidence was taken on both sides, and the court gave certain instructions, and the jury, by their verdict, found for the defendant under the instructions of the court, and judgment was rendered on the verdict for the defendant, and, he having excepted to the several rulings of the court refusing instructions asked for by him and giving others for the defendant, the plaintiff moved the court to set aside the verdict and grant him a new trial, upon the ground that the court had misinstructed the jury as to the law; which motion the court overruled, and the plaintiff applied for and obtained a writ of error to this court. The case, briefly stated, is as follows :

The plaintiff, a boy less than seventeen years of age, in company with another boy, whose age is not stated, was joined by another boy fourteen years of age, and encountered a sectionmaster of the defendant company, who had a hand-car and some hands going a few miles out on the railway, west of the city of Staunton, to do some work in gathering up scraps of iron and some heavy frogs which had been left out in recent track-repairs. It was agreed between the plaintiff and the other boys on the one hand, and the section-master on the other, that these boys could ride on the hand-car to the point indicated, if they would work like other hands in gathering up the iron in question. This was agreed to, and, the iron having been collected and loaded on the hand-car, except heavy frogs, which were loaded on a freight train, the hand-car started back in command of the section-master, and, by putting forward a flagman and stopping a freight train they encountered on the way, and unloading the hand-car and taking the same off the track, it escaped collision. But, loading up again, and starting toward Staunton, the grade descending, and the hand-

car heavy with iron, the speed became greater than is usual on hand-cars—twenty-five miles an hour—and no flagman being out, and no brakes on the hand-car, except a stick held by the section-master, they encountered a train running rapidly out of Staunton, flat-car in front, and, the shock occurring almost without warning, the other parties jumped off, but the plaintiff was struck and injured, as were others who jumped, and three men were killed on the flat-car on the train, and nothing was found of the hand-car but one wheel.

The plaintiff was seriously injured, and the evidence tends to show that these were permanent injuries; he has, according to that, lost the use of his right arm, which might freeze or mortify without his knowing it, and his head has been so injured by the hurts he received that they are worse than those in his limbs. He is unfitted for any business requiring a strong mind or strong body. He is blighted every way in body and mind. The accident happened at a critical period of his life, and seriously interferred with his development, and he never can be the man he would have been if he had not sustained the injuries proven in the case.

The plaintiff asked the court to instruct the jury—

(1) If the jury shall believe from the evidence that at the time of the collision, which resulted in the injuries to the plaintiff of which he complains in this action, G. C. Ellis, as section-master of the defendant company on that part of said company's road on which the collision occurred, was on the hand-car involved in said collision, and in the control and management of the same, and that the plaintiff was then and there on said hand-car by permission of said Ellis, and without knowing that it was contrary to the rules of the defendant company for him to be on said hand-car, and that the injuries sustained by the plaintiff in said collision resulted from the gross negligence of the defendant company, or of its agents or any of them, whilst the plaintiff was on said hand-car, then the court instructs the jury that the defendant company is liable to the plaintiff in this action for said injuries.

(2) If the jury believe from the evidence that when the collision occurred between the hand-car and the train, which resulted in the injuries to the plaintiff for which he seeks to recover in the action, G. C. Ellis was the section-master of the defendant company on that part of said company's road upon which said collision took place, and that, as such section-master, he was then on the aforesaid hand-car, and in the actual control and management of the same and of the laborers thereon, and was in the habit of employing and discharging and controlling the laborers under him, and did, on the day upon which the collision occurred, and but an hour or two before its occurrence, agree with the plaintiff that he would take him on said hand-car with his force from West End, a suburb of Staunton, to La Grange, a point on defendant's road, three or four miles west of said starting-point, and bring him back on said hand-car in a short time on the same day, upon the condition and understanding that the plaintiff would aid in loading scrap-iron along the track at and near La Grange, on said hand-car, to be brought to Staunton, and that the plaintiff, in ignorance of any regulation of the company which forbid his being on the hand-car, so under the control of said Ellis, did go thereon to La Grange, and did, according to his undertaking, aid in loading scrap-iron on said hand car, and that, in returning from La Grange on said hand-car, the plaintiff, by reason of the gross negligence of the defendant company, or of its agents and representatives, in permitting the aforesaid collision to take place, was seriously and permanently injured, then the court instructs the jury that the plaintiff is entitled to recover of the defendant for such injuries.

(3) The court instructs the jury that a section-master of a railroad company, in charge of a particular section of the company's road, with a force of hands under him, to take care of and preserve said section, is not merely a co-employee with said hands, on an equal footing with them, but that the relation between the section-master and those working under him are those which exist between a superior and a subordinate, and

that, in all matters pertaining to the particular department in which the section-master is engaged, he is the representative of the company, and, therefore, if one who is employed by the section-master to work under him on his section is injured by the negligence of the section-master whilst engaged in and about said employment, the company cannot escape liability for said injury upon the ground that the injured party was the co-employee of the section-master; but the jury are further instructed that this will not prevent the company from showing, if it can, that, on other grounds or for other reasons, it is not liable to the injured party for the injuries he has sustained.

Which instructions the court refused to give; but, at the instance of the defendant, instructed the jury, among other things, that—

(3) Although the jury may believe from the evidence that the plaintiff requested Section Master Ellis to permit him to ride on the hand-car to La Grange, and that said Ellis replied that said plaintiff might go on the car if he would help to pick up scrap-iron, they are instructed that said request and reply did not make the plaintiff an employee of the railroad company, and did not give the plaintiff any right to ride on said hand-car, and did not obligate the company to protect the plaintiff from hurt and injury while riding on the same, and that, therefore, they must find a verdict for the defendant, unless the plaintiff has proven by a preponderance of evidence that the defendant company had authorized said Ellis to allow the plaintiff to ride on said hand-car.

*And the court, being of opinion that it could not fairly be inferred from the testimony,* that the plaintiff was either a passenger or an employee of the company, and that, from the familiarity of the plaintiff with its (defendant's) railroad and its employees, it was fairly to be inferred that he was aware of the rules and regulations of the company prohibiting persons from riding on the hand-cars, rejected plaintiff's first and second instructions, *supra,* as calculated to mislead the jury; and, being also

of opinion that the third (*supra*) instruction of the plaintiff was not applicable to the testimony in the case, rejected. that also, but gave the fourth instruction : to which action of the court the plaintiff excepted.

It is elementary, and is firmly settled in Virginia, that the court responds to questions of law, and the jury to questions of fact.   The court must decide on the admissibility of evidence, that being a question of law; but not as to its weight after it is admitted, that being a question of fact.   *McDowell* v. *Crawford*, 11 Gratt.   The decided cases evince a jealous care to watch over and protect the legitimate powers of a jury. They show that the court must be very careful not to overstep the line which separates law from fact.   They establish the fact that when evidence is *parol*, any opinion as to the weight, effect, or sufficiency of the evidence submitted to the jury, any assumption as a fact as proved, will be an invasion of the province of the jury.   Barton's L. Pr.  214, and cited cases ; *Barring* v. *Reeder*, 1 H. & M. 174; *Moore* v. *Chapman*, 3 H. & M. 266; *Fisher's Ex'or* v. *Duncan & Turnbull*, 1 H. & M. 366; *Whitacre* v. *McShaney*, 4 Munf. 310 ; *McCrae* v. *Scott & Saunders*, 4 Rand. 463; *Cornett* v. *Rhudy*, 80 Va. 617.

For making observations or instructions to the jury as to the weight to be given by them to any part of the testimony or the whole evidence the cause may be reversed and a new trial awarded.   Barton's L. Pr., *supra; Davis* v. *Miller*, 18 Gratt. 1; *Hopkins* v. *Richardson*, 9 Gratt. 486.

In this case the court, after duly impaneling a jury, undertook to decide for them every question of fact involved, and instructed them as to the weight of the testimony, and, in effect, directed their verdict; and the jury, recognizing that this had been done, in effect, rendered a special verdict, divesting themselves of all responsibilities whatever for the result, announced their verdict as directed by the court's instructions, and the court, against the exception of the plaintiff, rendered judgment thereon.   There has, in fact, been no

trial by the jury in this case, as that term is properly understood and defined, and the verdict and judgment must be set aside, reversed, and annulled, because of the misdirection of the court, which erred in rejecting the plaintiff's instructions and in giving the instructions given on the motion of the defendant; and, as the cause must go back for a new trial, we will say that the fifth count of the plaintiff's declaration stated a good cause of action, and the demurrer thereto should have been overruled by the court, and the action of the court in sustaining said demurrer to the said fifth count is erroneous.

For the foregoing reasons we are of opinion to reverse the judgment of the circuit court of Augusta herein, and to remand the case for a new trial to be had therein in the said circuit court.

JUDGMENT REVERSED.