# Richmond

RALPH H. CARROLL AND H. MARION MALONE, ETC. V.
MARGUERITE HUTCHINSON.

January 9, 1939.

Record No. 2003.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning
and Spratley, JJ.

The opinion states the case.

*B. Drummond Ayres* and *H. Ross Black, Jr.,* for the plaintiffs in error.

*Savory E. Amato, G. Walter Mapp* and *William King Mapp,* for the defendant in error.

HOLT, J., delivered the opinion of the court.

Miss Marguerite Hutchinson, who was injured in an automobile accident, sought compensation in the trial court and has secured a verdict and judgment for $1,350.

This plaintiff lived with her parents in Norfolk as did her sister, Miss Gladys. There was another sister, Miss Winifred, in New York, whom the Norfolk sisters wished to visit. These two sisters went to New York and were returning with Winifred, on vacation, when the accident occurred. Gladys drove; Marguerite could have driven but had no driver's license. The car in which they rode belonged to their father and was used with his knowledge and consent. Plaintiff tells us that it was by the father "turned over to Gladys," who gave to that daughter funds to meet all traveling expenses, and with money thus furnished, she did meet them as the occasion arose. Upon their return, they came into collision with a truck on an arterial road leading north and in Accomac county.

The accident occurred about a quarter to eight in the evening of August 10th. Four hundred or five hundred feet away, they saw coming up the road a large vehicle covered with many lights, apparently in its center. It turned out to be a truck and loaded trailer, 25 feet long and 7½ feet wide. The automobile was a Dodge sedan. The roadway, 18 feet wide, was paved with concrete and was clear and

straight. The automobile was then traveling at from 25 to 35 miles an hour and the truck from 20 to 25 miles an hour. In an attempt to escape collision, the automobile, which was on its right side of the road, turned still further to the right, when its right front and rear wheels dropped from the concrete to the shoulder, there worn away from 4 to 8 inches, and traveled on this shoulder for three or four car lengths, when it turned back upon the concrete. In doing this, the rear left wheel, which had theretofore been on the concrete, went off upon the shoulder; the car then came back upon the road practically at right angles and to a complete stop on its side of the road's center. There was ample room then for the truck to pass to the right. This it did not do but continued in the center of the road and struck the automobile somewhere about its right front wheel.

█ In this statement of facts, we have accepted as true evidence favorable to the plaintiff, as we should.

The plaintiff was injured, and there is no question as to the amount of the recovery.

At the hearing, defendants, who were non-residents, appeared specially for the purpose of quashing the process and contended that there had been no proper service. In such a case, personal service is provided for by statute, Code, section 2154 (70) (i), which reads:

" * * * such service shall be sufficient upon the said non-resident, provided, that notice of such service and a copy of the process or notice are forthwith sent by registered mail, with registered delivery receipt requested, by the director" (Division of Motor Vehicles) "to the defendant, or defendants, and an affidavit of compliance herewith by the director or some one designated by him for that purpose and having knowledge of such compliance shall be filed with the declaration or notice of motion."

This statute first appears in Acts of Assembly 1932, ch. 342, pp. 614-631, sec. 23 (i), which declares that:

"Service of such process or notice shall be made by leaving a copy of the process or notice with a fee of three ($3.00) dollars in the hands of the director, or in his of-

fice, and such service shall be sufficient upon the said non-resident; provided, that notice of such service and a copy of the process or notice are forthwith sent by registered mail by the director to the defendant and the director's affidavit of compliance herewith be filed with the declaration or notice of motion."

Thirty-five states have statutes of like purport which are practically everywhere held to be a valid exercise of police power. Where this is true, it follows that there is no denial of due process of law. That of Massachusetts came under review in *Hess* v. *Pawloski*, 274 U. S. 352, 47 S. Ct. 632, 71 L. Ed. 1091. There a statute which provides for service upon a non-resident was upheld. It reads:

"Provided, that notice of such service and a copy of the process are forthwith sent by registered mail by the plaintiff to the defendant, and the defendant's return receipt and the plaintiff's affidavit of compliance herewith are appended to the writ and entered with the declaration." G. L. Mass., ch. 90, sec. 3A, as added by St. 1923, ch. 431, sec. 2.

It differs from ours in that the return receipt must be appended to the writ. To the same effect is the New York statute. New York Vehicle and Traffic Law, Consol. Laws, ch. 71, sec. 52; *Shushereba* v. *Ames*, 255 N. Y. 490, 175 N. E. 187. These statutory safeguards are adopted in many states, and in those states which have adopted them, their conditions must be observed. But they have not been universally adopted.

In Connecticut, process must be sent by registered mail, postage prepaid. That statute was upheld. *Hartley* v. *Vitiello*, 113 Conn. 74, 154 A. 255. The court commented upon the fact that a different conclusion had been reached by some of the inferior courts of New York but in courteous language declined to adopt their conclusions.

Maryland only requires that this process be sent by registered mail. *Grote* v. *Rogers*, 158 Md. 685, 149 A. 547. That case declared the statute to be unconstitutional but based its conclusion upon the fact that the address of the registered letter was conclusively presumed to be correct.

In Minnesota, all that is demanded is that process be sent by mail. This provision was upheld in *Schilling* v. *Odlebak*, 177 Minn. 90, 224 N. W. 694, although there reversal of the trial court was ordered but for another reason.

All required by the Wisconsin statute, St. 1925, sec. 85.15(3), is that process be "sent by mail by the plaintiff to the defendant at his last known address." *State* v. *Belden*, 193 Wis. 145, 211 N. W. 916, 214 N. W. 460, 57 A. L. R. 1218.

The validity of our statute was attacked in the case of *Weiss* v. *Magnussen*, D. C., 13 F. Supp. 948, 950. Judge Way, sustaining it said:

"If I construe the Virginia statute correctly it has done something more than make 'a reasonable provision for such *probable communication.*' It has definitely required the communication, a copy of the summons or notice, to be 'forthwith sent * * * to the defendant or defendants.' It would appear to follow, therefore, that failure to comply with that certain and definite provision of the statute cannot result in any valid judgment against the defendant, while compliance with the provision assures that defendant will have ample notice of the suit and an opportunity to have his day in court."

We are safe in using this yardstick laid down by Mr. Chief Justice Taft: "We think that a law with the effect of this one should make a reasonable provision for such probable communication." *Wuchter* v. *Pizzutti*, 276 U. S. 13, 48 S. Ct. 259, 260, 72 L. Ed. 446, 57 A. L. R. 1230. Judge Way in the *Weiss Case* thought that we had met and more than met this requirement.

In the instant case our statute, which does not require that the return receipt be filed as an exhibit, has been literally followed. The request for a return receipt was never essential.

A letter properly addressed, stamped and mailed is presumed to have reached the addressee, although this presumption is not conclusive, but is founded upon the probability that the Postal Department will properly dis-

charge its duties. *Yanago* v. *Aetna Ins. Co.*, 164 Va. 258, 178 S. E. 904. This presumption is strengthened where the letter was registered; indeed, it is not contended here that there was no actual delivery. Defendants rest their case alone upon the fact that this return receipt has not been filed, a requirement, as we have seen, not written into our statute. Not only does it contain reasonable provisions for probable communication, but the conduct of the parties indicates communication was actually had. Counsel promptly appeared, and while their special appearance did not waive the claim that this return receipt should have been filed, it did indicate reasonable probability that process had been received, not through random chance, as was true in *Wuchter* v. *Pizzutti*, 276 U. S. 13, 48 S. Ct. 259, 72 L. Ed. 446, 57 A. L. R. 1230, but because there had been compliance with an adequate statute. In said last named case, the court had under consideration a New Jersey statute which provided only for service of process on the Secretary of State. It was said that there was no provision there which made it reasonably probable that notice to the Secretary would be communicated to the defendant, and that in such a case, actual notice was not sufficient.

█ Our statute relating to service of process on these non-resident defendants is constitutional.

It is also contended that it is unconstitutional in that it embraces more than one object as expressed in its title. Constitution of Virginia, section 52.

█ The provisions relating to service of process on non-resident defendants is embodied in "The Motor Vehicle Code of Virginia," Acts 1932, ch. 342, p. 613. If they are germane to those purposes indicated by the title of this Automobile Code, they are constitutional.

This phase of this statute was satisfactorily dealt with in *Weiss* v. *Magnussen, supra,* where Judge Way said:

"In brief, I think that the Legislature in this instance has done nothing more than to treat numerous more or less closely related matters or subjects under one general head or title, namely, in an act designated and entitled 'The

Motor Vehicle Code of Virginia.' * * * One of the related subjects or matters dealt with under the general title is the operation of non-residents· of motor vehicles on the highways of Virginia. A consequence of such operation by non-residents is that from time to time their motor vehicles inflict injuries upon persons or property or both giving rise to causes of action against such non-residents for damages. * * * The challenged provision merely provides how notice of suit to recover for an injury alleged to have been inflicted under such circumstances may be served upon such non-resident after he has left the state. The Legislature in dealing with the general subject of the operation of motor vehicles on the state highways has seen fit to deal with that related subject under the general title, rather than to deal with it under some other title such as 'Service of Process or Notice upon Non-residents' or a similar title or under some other general title. * * * On the contrary, I think it reasonably clear that the Legislature in treating the subject under the general title as it did has not violated the· spirit or real object of section 52 of the State Constitution. In other words, the minor subject is not clearly diverse or dissimilar in its nature from the general title of the act but there is strong reason to consider it as germane to and as having a natural connection with the general subject stated in the title to the act."

See also, *Good* v. *Commonwealth*, 155 Va. 996, 154 S. E. 477.

█ Always it will be remembered that statutes are not to be declared unconstitutional unless courts are driven to that conclusion.

A number of objections are made to instructions.

█ It is said that Instruction B, given at the instance of the plaintiff, is erroneous in that it failed to take into consideration the plaintiff's negligence and failed to take into consideration the negligence of the driver of plaintiff's car. Instructions are to be read in connection with the evidence to which they are intended to apply. That instruction reads:

"The court further instructs the jury that drivers of vehicles proceeding in opposite directions shall pass each other to the right, each giving to the other, as nearly as possible, one-half of the main traveled portion of the roadway.

"And if the jury believe that the driver of the said defendant's truck at the time of and just prior to the accident was driving said defendant's truck to the left of the center of the road, then the driver of said truck was guilty of negligence as a matter of law, and if the jury believe this negligence was the proximate cause of the accident or contributed to the accident, they shall find a verdict in favor of the plaintiff."

Plaintiff was guilty of no negligence. The driver, when this approaching truck was seen, turned to the right as she should have done. When her right wheels slipped off the concrete pavement, she did what she might have been expected to do—she attempted to come back on it. Plainly Marguerite was not guilty of negligence in either of these movements, even if we were to concede that they were negligently executed.

The second objection to this instruction rests upon the doctrine of imputed negligence as applied to joint enterprises or adventures. It is said that the driver, Gladys, through negligence, brought about the accident, and that this negligence should be visited upon her sister, Marguerite, plaintiff here.

To restate the facts, an automobile of the father was "turned over to Gladys," to operate, and to that end he gave her money to purchase gasoline, etc., on this New York trip. Marguerite did not drive and was not expected to drive and had no license to drive, although she was capable of driving had the car been entrusted to her.

Before the doctrine of imputed negligence can apply, a joint right of control must have been vested in each sister. The principles involved are analogous to those which apply to principal and agent; each is the agent of the other. It is no doubt true that Gladys, in incidental

matters, would have deferred to any request her sister might have made. But that of itself is not enough. Deference must rest not upon a desire to please but upon the recognition of a right.

This very excellent statement of the rule appears in the leading case of *Cunningham* v. *Thief River Falls*, 84 Minn. 21, 86 N. W. 763, 765:

"Parties cannot be said to be engaged in a joint enterprise, within the meaning of the law of negligence, unless there be a community of interest in the objects or purposes of the undertaking and an equal right to direct and govern the movements and conduct of each other with respect thereto. Each must have some voice and right to be heard in its control and management."

See also, *Schwartz* v. *Johnson*, 152 Tenn. 586, 280 S. W. 32, 47 A. L. R. 323, and note.

It applies alike to members of one family and to strangers.

"Whether the occupant be a stranger to the driver or a member of the driver's family, the negligent acts of the driver are in neither case imputable to the passenger, unless the relation between them is such as to entitle the passenger to give directions as to the operation of the automobile,—the relation of principal and agent or master and servant." *Chicago, R. I. & P. Ry. Co.* v. *Fanning*, 42 F. (2d) 799, 803. *Miller* v. *Union Pac. R. Co.*, 290 U. S. 227, 54 S. Ct. 172, 78 L. Ed. 285; *Norfolk & W. Ry. Co.* v. *James*, 147 Va. 178, 136 S. E. 660.

Indeed the fact that the parties take turn about in driving does not necessarily make the enterprise a joint one. *Isaacson* v. *Boston, W. & N. Y. St. Ry. Co.*, 278 Mass. 378, 180 N. E. 118.

Our court has had occasion to consider this subject many times. *Washington & O. D. Ry. Co.* v. *Zell*, 118 Va. 755, 88 S. E. 309, is relied upon by these defendants. Zell and Peck were intimate friends and residents of Alexandria. Peck owned an automobile, and these two friends were accustomed to drive about the country in it, sometimes with one at the wheel and sometimes with the other. On a Sun-

day morning Zell came to Peck's home and called him out of bed. While Peck was eating breakfast, Zell went out, brought the machine from its place and cleaned it up. These two friends then started to Washington for a purpose not disclosed, Peck driving. There was an accident due to his negligence. That negligence, the court held, should be imputed to Zell. This case, though not overruled, has not been followed.

In *Director General* v. *Pence's Adm'x*, 135 Va. 329, 116 S. E. 351, it there appears that Eddie Carter, driving an automobile in which were Terrell and two others, left Richmond in search of whiskey. He met with an accident. It was held that negligence could not be imputed and that a common purpose was not the test. The court said [page 356]:

" * * * the 'joint enterprise' which will render the contributory negligence of a driver imputable to a person riding with him must invest such person with some voice in the control and direction of the vehicle. The rule is founded upon the doctrine of principal and agent. The passenger must be so related to the driver as that the maxim *'Qui facit per alium facit per se'* is applicable."

This issue was submitted to a jury, and it is interesting to note that Judge Kelly wrote the opinion in each case. To the same effect see *Virginian Ry. Co.* v. *Farr*, 147 Va. 217, 136 S. E. 668. In that case a party was traveling with the owner to attend a race meet. The question of their relationship was submitted to the jury.

In *Miles* v. *Rose*, 162 Va. 572, 175 S. E. 230, it appears that a party set out in an automobile in search of liquor. There was an accident in which Rose was injured. He sought to recover damages from Miles, who drove the car. The court said [page 236]:

"Notwithstanding the fact that Denton and the plaintiffs were mutually interested in going for, purchasing, and bringing back to camp the whiskey, so far as their presence in Denton's automobile was concerned, their relationship to him was that of guests to a host."

It also said:

"But the engagement between the parties must have given rise to a relationship between them such that each is entitled to a voice in the control and operation of the automobile."

Here, too, there was a submission of this issue to a jury. There must be a common purpose, and the party charged must either have had the right of control or must have undertaken to exercise it. We know no better definition than that given in *Cunningham* v. *Thief River Falls, supra.* Ordinarily this is a question for the jury, although the facts may be so undisputed as to make it one of law. In the instant case, we have a jury's verdict under proper instructions. It was that negligence could not be imputed, and with it we find no fault.

The court, at the instance of the plaintiff, gave this Instruction E:

"The court instructs the jury that the driver of the Hutchinson car in which the plaintiff was riding, seeing defendants' truck approaching on the wrong side of the road, or in the middle thereof, had the right, as a matter of law, to assume that defendants would observe the law of the road and move over to their right side so as to pass the Hutchinson car safely, and if you believe from the evidence that defendants failed to observe the law of the road, and that when the driver of the Hutchinson car saw that defendants were not going to move to their right, she had no reasonable time to avoid the collision, then the defendants were guilty of negligence, and plaintiff is entitled to recover if you further believe that such negligence on the part of defendants was the proximate cause of the collision."

The defendants say that their truck was on its right side of the road, and its driver tells us that the accident occurred in this wise: The sedan slipped from the concrete; in coming back the driver appears to have lost control. However that may be, as a matter of fact it ran across the center of the paved roadway and directly in front of the truck at a time when it was too late to avoid a collision.

Manifestly, in the light of this evidence, the court should not have assumed that the truck was out of place and recognized that fact in the instruction itself, for it there told the jury, "if you believe from the evidence that the defendants failed to observe the law of the road," etc. In other instructions this law of the road had been stated, and so it would seem that the court intended to submit to the jury its manner of observation or violation. In addition to this, and in Instruction B, given for the plaintiff, the question of whether or not the truck had left the center of the road was definitely submitted to it.

Again the facts relied upon by the defendants to defeat recovery are plainly set out in Instruction 4; it reads:

"The court instructs the jury that if you believe from the evidence that the wheels on the right side of the Hutchinson car dropped from the concrete portion of the highway upon the dirt shoulder upon approaching the Malone truck, and that the concrete portion of the highway was higher than the dirt shoulder upon which said wheels dropped, and that in an effort to bring said car back upon the concrete portion of the highway the Hutchinson car was driven across the same to the east side of said highway and in front of the Malone truck, and if you further believe that this was the sole proximate cause of the accident, in which the plaintiff was injured, then the court instructs you that you must find a verdict for the defendants."

From this we reach the conclusion, not without hesitancy, that the jury was not misled, and that this case should not be reversed because of that erroneous instruction.

Error is assigned as to other instructions given and refused. We shall not undertake to discuss them in detail but think it sufficient to say that the jury was fairly instructed, except in the instance noted; that was error but not reversible error.

Plainly, there is evidence to sustain the jury's verdict.

The assignments of error have not been followed in their order, but we have dealt with those which are of substance.

For reasons given, the judgment appealed from should be affirmed, and it is so ordered.

*Affirmed.*

SPRATLEY, J., dissenting.

I am of opinion that the giving of instruction E constituted reversible error. The instruction assumed the existence of a material fact, when there was a direct conflict as to the existence of such fact. The conflicting evidence was entitled to consideration. Upon it a verdict for the defendants could have been based. The province of the jury was invaded.

In *Tyler* v. *C. & O. Railway Company*, 88 Va. 389, 13 S. E. 975, 976, Judge Lacy, speaking for this court, ably and clearly set out the rule as follows:

"It is elementary, and is firmly settled in Virginia, that the court responds to questions of law, and the jury to questions of fact. The court must decide on the admissibility of evidence, that being a question of law; but not as to its weight after it is admitted, that being a question of fact. *McDowell* v. *Crawford*, 11 Gratt. (52 Va.) 377. The decided cases evince a jealous care to watch over and protect the legitimate powers of a jury. They show that the court must be very careful not to overstep the line which separates law from fact. They establish the fact that when evidence is parol, any opinion as to the weight, effect, or sufficiency of the evidence submitted to the jury, any assumption as a fact as proved, will be an invasion of the province of the jury. Barton's L. Pr. 214, and cited cases; *Baring* v. *Reeder*, 1 Hen. & M. (11 Va.) [154] 174; *Moore* v. *Chapman*, 3 Hen. & M. (13 Va.) [260] 266; *Fisher's Ex'r* v. *Duncan & Turnbull*, 1 Hen. & M. (11 Va.) [563] 576 [3 Am. Dec. 605]; *Whitacre* v. *M'Ilhaney*, 4 Munf. (18 Va.) 310; *M'Rae* v. *Scott & Saunders*, 4 Rand. (25 Va.) 463; *Cornett* v. *Rhudy*, 80 Va. 710.

"For making observations or instructions to the jury as to the weight to be given by them to any part of the testi-

mony or the whole evidence the cause may be reversed and a new trial awarded. Barton's L. Pr., *supra; Davis* v. *Miller,* 14 Gratt. (55 Va.) 1; *Hopkins* v. *Richardson,* 9 Gratt. (50 Va.) [485] 486."

In *Skeen* v. *Belcher,* 128 Va. 122, 104 S. E. 582, this principle was followed. There the trial judge instructed the jury in such a manner as to convey his opinion of the evidence. There was a direct conflict of fact, and it was held that the expression of the judge's opinion was improper.

Likewise in *Jenkins* v. *Commonwealth,* 132 Va. 692, 111 S. E. 101, 25 A. L. R. 882, it was held that an instruction which assumed a fact as proven, where there was a conflict, was reversible error, even though the jury was told in the same instruction that the contradictory evidence might be considered.

As I understand the doctrine of harmless error, it is designed to support a verdict or judgment only when, in spite of the error committed, no other judgment could have been properly rendered.

"It is also well settled that if a misdirection or other mistake of the court appear in the record, it must be presumed that it affected the verdict of the jury, and is therefore a ground for which the judgment must be reversed, unless it plainly appears from the whole record that the error did not, and could not, have affected the verdict. 4 Minor's Inst. (4th Ed.) 937; *Kincheloe* v. *Tracewells,* 11 Gratt. (52 Va.) 587, 588; *Danville Bank* v. *Waddill,* 27 Gratt. (68 Va.) 448; *Edmunds* v. *Harper,* 31 Gratt. (72 Va.) 637, 644, 645; *Richmond Railway & Electric Co.* v. *Garthright,* 92 Va. 627, 631, 24 S. E. 267 [32 L. R. A. 220, 53 Am. St. Rep. 839], and cases there cited." *Kimball & Fink* v. *Borden,* 95 Va. 203, 28 S. E. 207.

In 5 C. J. Secundum, under the title of Appeal and Error, and relating to instructions, it is said, section 1766: "An instruction which improperly assumes the existence of a material fact is a material error unless it appears that the party complaining was not prejudiced."

It is only when the facts assumed are undisputed or admitted that the jury ought to be told the consequences resulting therefrom.

Whether or not an erroneous instruction misleads the jury, is a question which belongs entirely in the realm of conjecture. The test is not solely whether the error actually affected the verdict, but rather whether it might have affected it.

In all other respects, I concur in the majority opinion. However, for the error admitted in the majority opinion, I am of opinion that the judgment should be reversed and the case remanded for a new trial under proper instructions and in accordance with the rule we have heretofore followed.

The plaintiff invited the error by asking for the instruction. She will have lost none of the rights to which she is entitled, if she is required to submit to a fair and impartial trial under the law. The case is close and doubtful, and this adds to the reasons requiring a reversal because of the erroneous instruction.