## Richmond

VIRGINIA TRANSIT COMPANY AND DONALD M. PUETZ v. MADGE H. SIMMONS.

April 23, 1956.

Record No. 4494.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Miller and Whittle, JJ.

The opinion states the case.

*E. Milton Farley, III,* (*T. Justin Moore, Ralph H. Ferrell, Jr.* and *Hunton, Williams, Gay, Moore & Powell* on brief), for the plaintiffs in error.

*G. Kenneth Miller* (*John G. May, Jr.* on brief), for the defendant in error.

MILLER, J., delivered the opinion of the court.

A judgment was obtained by Madge H. Simmons against Virginia Transit Company and Donald M. Puetz for personal injuries and property damage. Her injuries and property damage were sustained on the afternoon of November 6, 1953, when a bus operated by Puetz collided at the intersection of Sheppard street and Monument avenue in the city of Richmond, Virginia, with plaintiff's Cadillac car, driven by her husband, John Simmons, in which she was seated.

The parties will be referred to as plaintiff and defendants in accordance with their positions in the trial court.

Defendants now admit that the bus driver was negligent and that his negligence was a proximate cause of the collision. In their brief, that concession is stated thus:

"Appellants likewise concede that the failure of the bus operator to maintain a proper lookout was a proximate cause of this accident."

Defendants, however, insist that the evidence was sufficient to show that (1) Simmons was guilty of negligence that was a proximate cause of the collision and that he and plaintiff were engaged in a joint enterprise, and his negligence is therefore imputable to her, and (2) plaintiff was herself guilty of negligence that contributed to the collision.

The jury were instructed that if the bus driver and Simmons were guilty of negligence and that if the negligence of each contributed to the collision as a proximate cause, then they should find for the plaintiff. They were also told that if Simmons was guilty of negligence and if his negligence was the sole proximate cause of the collision, they should find for the defendants. However, the court refused to give instructions A[1] and F[2] tendered by defendants on the

---

[1] The Court instructs the jury if you believe from the evidence that Madge H. Simmons and her husband, Johnnie Simmons, the driver of the westbound automobile on Monument Avenue, were riding together to the same destination for a common purpose and that Madge H. Simmons had some voice in the control and direction of her automobile, then Madge H. Simmons and her husband, Johnnie Simmons, the

principle of joint enterprise under which the jury could have imputed Simmons' negligence to plaintiff. It also refused instruction G which would have submitted to the jury the issue of whether or not plaintiff was herself guilty of contributory negligence.

The errors assigned by defendant to the refusal of the court to instruct as requested require that the pertinent evidence be stated.

Monument avenue extends in an easterly and westerly direction and its over-all width is 116 feet. It consists of easterly and westerly traffic lanes, each 36 feet wide, separated by an island or grass plot 44 feet wide.

Sheppard street, 34 feet wide, extends in a northerly and southerly direction, and intersects Monument avenue at a right angle.

The company's passenger busses operate northwardly and south-wardly along Sheppard street, and the collision happened when a northbound bus collided with the car which was being driven west-wardly along Monument avenue. At the time of the accident the only traffic controls at the intersection were stop signs on Sheppard street 20 feet from Monument avenue.

John Simmons testified that he is an insurance salesman in Richmond, Virginia, where he maintains a permanent home, but he also has a home in Hot Springs, Arkansas, where he goes at times to be treated for bursitis. The Cadillac car involved in the collision was purchased by plaintiff and was titled in her name in Arkansas, and at the time of the accident Simmons and his wife had just returned to Richmond from Hot Springs where he had been treated for bursitis. They left Hot Springs on November 4, 1953, accompanied by a lady

driver of the westbound automobile on Monument Avenue, were engaged in a joint enterprise and while they were engaged in a joint enterprise, negligence on the part of Johnnie Simmons, her husband, was in law, negligence on the part of the plaintiff, Madge H. Simmons.

And if you believe from the evidence that Madge H. Simmons and her husband, Johnnie Simmons, the driver of the westbound automobile on Monument Avenue, were engaged in a joint enterprise and that while they were engaged in their joint enterprise the automobile of Madge H. Simmons was negligently driven into collision with the northbound bus on Sheppard Street, then the plaintiff, Madge H. Simmons, cannot recover even though her husband, Johnnie Simmons, may have been driving the automobile when the collision occurred.

[2] The Court instructs the jury if you believe from the evidence that the collision was proximately caused by the joint and concurring and contributory negligence of the driver of the bus and the driver of the automobile while Madge H. Simmons was engaged in a joint enterprise with the driver of the westbound automobile, then you should find your verdict for the defendants even though you may believe from the evidence that the driver of the bus was more negligent than the driver of the automobile..

acquaintance. Simmons had some business to attend to in Roanoke, Virginia, and they spent the night of November 5 in that city. Upon arriving in Richmond on November 6, he drove direct to the home of their acquaintance in this city where he and his wife had lunch with their traveling companion and her daughter.

Simmons had driven about three-fourths of the time that they were en route from Arkansas to Richmond, and his wife had driven the balance of the time. He paid for the gasoline sometimes and "sometimes she paid for it," and when he was driving, he would usually accede to her wishes whenever she wanted to stop for the night, for lunch, or "for other reasons * * *." In describing how the accident happened, he said that after having lunch with their acquaintance, he and his wife left their friend's home, and it was between two and three o'clock in the afternoon while proceeding along Monument avenue toward their residence in the western part of the city that the accident occurred.

As the car approached Sheppard street, a light snow was falling, but one could see "two blocks or better." Simmons was driving from fifteen to twenty miles an hour, and when about 100 to 125 feet east of Sheppard street, he looked at the intersection, which he described as the area within the four outside corners of the two streets. Simmons saw no vehicle in the intersection but noticed two cars on Monument avenue slightly ahead of him and to his right. Simmons then proceeded on into the intersection and did not see the bus until "just before the collision * * * only just a little bit before it hit me."

Plaintiff testified that they had been to lunch at their friend's home, and when the accident happened, her husband was driving at about twenty miles per hour along Monument avenue toward their home. She said "it was snowing slightly," and as their car approached Sheppard street, she looked in the direction of the intersection. She did not state how far she was from Sheppard street when she looked, but she saw no vehicle in the intersection but did see a car ahead and to her right. When asked if she saw "the bus prior to the accident," she answered, "Well, just prior to the accident." There is nothing to show how far the bus was from their car when she saw it, or how much time elapsed after she saw it until the collision.

Unquestionably there was evidence from which the jury could have found that Simmons was guilty of negligence that contributed to the collision. If the evidence also supports defendants' theory of a joint enterprise, the court should have instructed on that principle. Likewise, if a finding could have been made that plaintiff was guilty

of contributory negligence, then that issue should have been put to the jury.

What constitutes a joint enterprise or a common purpose between two or more persons, and what is necessary to establish such a relation so as to impute the negligence of one participant therein to another is defined and stated in the following authorities:

"In a joint enterprise, in order to impute the negligence of one of the parties to the other, each must have authority to control the means or agencies employed to execute the common purpose. To constitute a joint enterprise within the meaning of the law, the parties must have a community of interest in the object and purpose of the undertaking, and an equal right to direct and govern the movements and conduct of each in respect thereto." 13 M. J., Negligence, § 44.

"If two or more persons unite in the joint prosecution of a common purpose under such circumstances that each has authority, express or implied, to act for all in respect to the control of the means or agencies employed to execute such common purpose, the negligence of one in the management thereof will be imputed to the others. Accordingly, if two persons are engaged in a joint enterprise, the contributory negligence of one will bar a recovery by either against a third person.

"Parties cannot be said to be engaged in a joint enterprise, within the meaning of the law of negligence, unless there is a community of interests in the objects or purposes of the undertaking, and an equal right to direct and govern the movements and conduct of each other with respect thereto. * * *" 38 Am. Jur., Negligence, § 237.

"But the 'joint enterprise' which will render the contributory negligence of a driver imputable to a person riding with him must invest such person with some voice in the control and direction of the vehicle. The rule is founded upon the doctrine of principal and agent. The passenger must be so related to the driver as that the maxim '*Qui facit per alium facit per se*' is applicable. * * *" *Director General of Railroads* v. *Pence's Adm'x.*, 135 Va. 329, 345, 116 S. E. 351.

Similar statements are contained in *Virginian Railway Co.* v. *Farr*, 147 Va. 217, 136 S. E. 668; *Miles* v. *Rose*, 162 Va. 572, 175 S. E. 230; *Carroll* v. *Hutchinson*, 172 Va. 43, 200 S. E. 644; *Outlaw* v. *Pearce*, 176 Va. 458, 11 S. E. 2d 600; *Baltimore & Ohio R. Co.* v. *Green*, 136 F. 2d 88; 5 *Berry*: Automobiles, (7th ed.), § 5.158, p. 206; 2 M. J., Automobiles, §§ 60, 61, pp. 538, 539; 5 Am. Jur., Automobiles, § 498,

p. 784; 65 C. J. S., Negligence, § 168; *Painter* v. *Lingon*, 193 Va. 840, 71 S. E. 2d 355.

How or when Simmons went to Hot Springs, whether or not his wife accompanied him on the trip there, and how long either of them had been in Arkansas are facts not disclosed by the record. Yet it does appear that the sole object of the trip to Hot Springs was for Simmons to take treatment for the bursitis from which he suffered. It is not suggested that plaintiff made the trip from Richmond to Hot Springs for any reason other than her normal desire to be with her husband when he was required, for reasons of health, to take treatment away from his home for a period of time.

When Simmons' treatment in Hot Springs was concluded, it may be reasonably inferred that both he and his wife desired to return to their home in Richmond, and the natural thing for them to do was to make the trip home in the same vehicle. The proved facts show that Simmons' presence in Arkansas was personal to himself, *i. e.*, to be treated for bursitis. The manner, mode and circumstances under which he and his wife returned to Richmond were nothing more than the normal association of a married couple traveling together in an automobile owned by one of them.

The record is devoid of any evidence tending to show that either one had or undertook to exercise control over the other while either was driving the car.

The marital relationship does not preclude a husband and wife from entering into a joint enterprise and each thus becoming the principal and the agent of the other while engaged in the prosecution of their common undertaking. Yet because of the natural desires, interests and relations incident to their marital status, a joint adventure may not exist between a husband and wife when they engage in an undertaking though the same undertaking, if engaged in by strangers, might measure up to a joint enterprise and render each the agent of the other. If what the husband and wife undertake to do is merely the result of their marital relation and not because of a community of interest for the accomplishment of a common purpose or object, then no joint enterprise exists.

"That the negligence of the driver in operating an automobile may be imputed to a person riding therein with him on the ground that they are engaged in a joint enterprise, it is not sufficient that they have a mutual or joint interest in the objects and purposes of the trip. * * * But the engagement between the parties must have given rise

to a relationship between them such that each is entitled to a voice in the control and operation of the automobile." *Miles v. Rose, supra,* at 585.

To make each of two or more persons responsible for the negligence of the other under the principle of joint enterprise in the operation of an automobile, the right to have a voice in the operation and control of the vehicle must result from the circumstances, purpose, and nature of the undertaking in which they are engaged.

The normal and usual courtesies existing between a husband and wife on a motor trip together and the willingness of each to observe and acquiesce in the reasonable desires and wishes of the other as to the manner or way they operate the motor vehicle occupied by both of them, whichever may be its owner, is not the character of conduct which necessarily establishes a joint enterprise. *Carroll v. Hutchinson, supra.*

When the facts and circumstances in evidence indicate that the actions and conduct of the parties resulted merely from the status of husband and wife, one may not make of their undertaking a joint enterprise and impose upon them the responsibilities and liabilities incident to the relation of principal and agent.

The only purpose that these parties had in common by traveling together in the wife's automobile, which each supplied with gas and drove at times, was to return to their home in the most convenient manner. That desire and the participation of each in the operation of the car were due to the marital relationship that existed between them. That does not justify a finding that they were engaged in a joint enterprise, and acting as each other's agent in the operation of the automobile. See 31 Texas Law Review 602.

■ Does the evidence justify a finding that plaintiff, who was exercising no control over the vehicle, was guilty of contributory negligence in failing to see the bus sooner than she did and to warn her husband of its approach in time for him to avoid the collision?

A passenger in an automobile driven by another is not required to exercise the same vigilance and watchfulness as the driver.

"[T]he guest has no duty to direct or control the driver who has physical control of the car, but may trust him until it becomes clear that such trust is misplaced." *Garst v. Obenchain,* 196 Va. 664, 85 S. E. 2d 207.

It is, however, the passenger's duty to exercise reasonable care for his own safety, that is, he must observe the same degree of care that

a reasonable person would exercise under like circumstances.

"While an occupant of a vehicle is not required to exercise the same watchfulness as the driver, it is his duty to exercise ordinary care, including a reasonable use of his faculties of sight, hearing, and intelligence, to observe and appreciate danger or threatened danger of injury, and, if he fails to do so, and such failure contributes to the injury complained of as a proximate cause, he is guilty of contributory negligence." 65 C. J. S., Negligence, § 152. 63 A. L. R. 1432; 4 *Blashfield*: Cyclopedia of Automobile Law and Practice, (Perm. ed.), Part 1, § 2411; 5 Am. Jur., Automobiles, § 475; 2 M. J., Automobiles, § 39.

There is no evidence to suggest that Simmons had failed to keep a proper lookout or had operated the car negligently previous to the mishap. Immediately before, and at the time of the collision, he was driving at a moderate and lawful speed. There was nothing to alert plaintiff or indicate to her that Simmons was not keeping a proper lookout for other vehicles; nor was there anything to prompt her to be on the lookout for vehicles approaching from side streets.

Plaintiff's testimony, however, shows that when their car was some distance from Sheppard street, she looked at the intersection and saw a car ahead and somewhat to her right. Her attention was momentarily attracted by that vehicle, and merely because she failed to observe the bus as it entered the intersection from her left in time to warn her husband of its approach does not prove that she was negligently inattentive. The fact that she did not see the bus until "just prior to the accident" is insufficient to prove that she was guilty of negligence that contributed to the collision. Instruction G was properly refused.

*Affirmed.*