# Staunton

## Floyd R. Miller v. Lyons S. Query.

September 3, 1959.

Record No. 4978.

Present, All the Justices.

The opinion states the case.

*W. C. Pender* (*Pender & Coward*, on brief), for the plaintiff in error.

*George H. Gray* (*Outland & Gray*, on brief), for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

On May 6, 1958, a young man, Jackie Lee Hamrick, was a guest in the home of Floyd R. Miller on Biltmore Road, in the City of Norfolk, Virginia. Hamrick and Miller were both in the Navy and stationed on the same ship. On the afternoon of that day Hamrick drove to Miller's home and parked his 1940 Packard sedan in front of the house. They had dinner together, watched television, drove in Miller's automobile to see a mutual friend, and returned to Miller's home. There they watched television until approximately 1:00 a. m., May 7, when Hamrick took his departure and went out to his automobile. He was unable to get the motor of his vehicle started, and returned to the house and asked Miller to assist him. Miller thereupon got his automobile and placed it behind Hamrick's car for the purpose of shoving that car and getting its motor started. Hamrick's car was parked facing in an easterly direction toward Tidewater Drive. Hamrick took the wheel of his car, and Miller's car began pushing the disabled vehicle down Biltmore Road to its intersection with Tidewater Drive. After Miller's car had attained some speed, he would disengage the vehicles and allow the Packard to proceed under the momentum furnished. Efforts to start the motor of the Packard were futile, so Miller pushed the Packard around a right turn into Tidewater Drive and thence south past two other intersections to a filling station lot at the corner of Naval Base Road and Tidewater Drive. The filling station was closed, so Miller shoved the Packard around on the filling station lot to Tidewater Drive, and began to push it back to his residence. The lights on Hamrick's car

went out, when the return trip was begun; but the lights on Miller's car were burning properly.

It had rained on and off during the evening of May 6, and during the time of the activities herein mentioned it was raining heavily and the streets were very wet. The return trip necessitated a left turn from Tidewater Drive into Biltmore Road, and the two cars proceeded in the inside of the two northbound lanes of Tidewater Drive, a four-lane highway, with well marked lines for traffic. The speed limit thereon was 40 miles per hour.

At a point approximately 75 feet south of the intersection of Biltmore Road with Tidewater Drive, Miller gave the Packard a hard push, which he thought sufficient to force the Packard to a point where a left turn could be made into Biltmore Road.

Lyons S. Query was a guest passenger sitting on the front seat of an automobile proceeding north on Tidewater Drive in the outside lane. That automobile was traveling between 20 and 25 miles an hour, a speed slightly greater than that of Miller's automobile and the disabled vehicle. Query's car was passing the right rear of Miller's automobile when the Packard turned east from the inside lane across the outside lane in front of the Query car. The two cars collided in the outside lane, near a driveway to a private residence, and the Packard entered the driveway. As a result, Query was seriously injured.

Michael G. Hillegass, owner and driver of the car in which Query was a passenger, said that when his car had reached the rear of Miller's vehicle, he noticed the unlighted, black-painted Packard coming across his path. He hollered "Look out," and applied his brakes; but the front end of his automobile hit the middle or rear of the Packard. He said he had no opportunity to turn either to the right or left, because at that particular time there was a curb on his right and the car of Miller on his left. Another passenger in the car of Hillegass said he saw Miller's car as Hillegass slowed down; that it looked like Miller was going to make a left turn; and that as they came to the right rear fender of Miller's car, "all of a sudden this car (the Packard) came out of nowhere and we hit it."

Query said he did not see the Packard make the turn, but that he saw "the tail end of it" just before it was struck.

Miller testified that he did not anticipate the possibility that Hamrick would take a right turn; that he had told the latter "to take two blocks down and then turn to the left, and when he passed,

from what I understood at least, after he had passed Gladstone he thought that was my street, and I had already broken away from him, but I was still close enough to him to know when he went to make the turn, and when he made a turn to the right I hit my brake and stopped dead and asked myself why is he turning to the right, and then I heard the collision." He said it was raining "very hard" at that time and he thought it was a fair conclusion that Hamrick's windshield wipers were not operating because his motor was not running and his electrical system was out.

Hamrick did not testify and it appears that he could not be located for service of process.

Query filed a motion for judgment against Miller. At the conclusion of plaintiff's evidence and at the conclusion of all the evidence, the court overruled motions of the defendant to strike made upon the ground that there was no evidence upon which the jury could find the defendant guilty of negligence. The jury, after having been instructed by the court, returned a verdict of $5,000 against Miller. A motion to set it aside as contrary to the law and the evidence was overruled, and judgment in accordance with the verdict of the jury was thereupon entered.

In a letter to counsel, the trial court stated that Miller and Hamrick were engaged in a joint enterprise, and that there appeared no doubt that Miller aided and assisted Hamrick in violating his duty in failing to "remove the disabled vehicle from the highway as soon as reasonably possible."

Miller contends that the trial court erred in instructing the jury that if they believed from the evidence that he and Hamrick were engaged in a joint enterprise, then the negligence, if any of Hamrick, was imputed to Miller; and in further instructing the jury that "The law of Virginia requires the operator of a disabled vehicle to remove the same from the highway as soon as reasonably possible;" that, "The violation of this law is negligence;" that "If Hamrick violated this law he was guilty of negligence;" and if Miller "aided or assisted Hamrick in the violation of this law, then defendant was likewise guilty of negligence." Miller also argues that the court erred in refusing Instructions D-2 and D-3, requested by him, on the ground that they correctly "stated the law applicable to the facts of the case."

The two controlling questions are: First, whether Miller and Hamrick were engaged in a joint enterprise so that the negligence of Ham-

rick should be imputed to Miller; and, second, whether there was sufficient evidence to find the defendant guilty of negligence which proximately caused or contributed to the collision.

■ The doctrine of joint enterprise has been presented to the court frequently in recent years due to the great multitude of automobile accidents in which the negligence of the operator of the vehicle was sought to be imposed on a passenger in the vehicle.

In *Director General* v. *Pence's Adm'x*, 135 Va. 329, 345, 116 S. E. 351, 356, we said:

"But the 'joint enterprise' which will render the contributory negligence of a driver imputable to a person riding with him must invest such person with some voice in the control and direction of the vehicle. The rule is founded upon the doctrine of principal and agent. The passenger must be so related to the driver as that the maxim *'Qui facit per alium facit per se'* is applicable."

In *Miles* v. *Rose*, 162 Va. 572, 578, 588, 175 S. E. 230, we approved the following statement:

" 'To constitute a joint enterprise within the meaning of the law, the parties must have a community of interest in the object and purpose of the undertaking, and an equal right to direct and govern the movements and conduct of each in respect thereto.' " (Cases cited.)

In a series of recent cases, we have reaffirmed the definition. *Carroll* v. *Hutchinson*, 172 Va. 43, 53, 200 S. E. 644; *MacGregor* v. *Bradshaw*, 193 Va. 787, 796, 71 S. E. 2d 361; *Painter* v. *Lingon*, 193 Va. 840, 845, 71 S. E. 2d 355; *Transit Company* v. *Simmons*, 198 Va. 122, 126, 92 S. E. 2d 291, and cases cited.

Similar statements are contained in 13 M. J., Negligence, § 44, page 563; 38 Am. Jur., Negligence, § 237; 5 Am. Jur., Automobiles and Highway Traffic, § 826, page 765; 60 C. J. S., Motor Vehicles, § 444, page 1142; 23 Words and Phrases, Joint Enterprise, page 69 *et seq.; Stogdon* v. *Charleston Transit Company*, 127 W. Va. 286, 32 S. E. 2d 276.

In *Carroll* v. *Hutchinson, supra*, discussing the subject, we said: "The principles involved are analogous to those which apply to principal and agent; each is the agent of the other." 172 Va. page 53.

In *Painter* v. *Lingon, supra*, 193 Va. page 840, we expressly overruled the decision in *Washington, etc., Ry. Co.* v. *Zell*, 118 Va. 755, 88 S. E. 309, on the doctrine of joint enterprise, as there applied. See also *MacGregor* v. *Bradshaw, supra*, 193 Va. page 796.

■ The facts in this case are without material conflict. Hamrick wanted the motor of his car started. Miller had no interest in the matter, save to aid a friend in distress. There was no community of interest between Miller and Hamrick. Miller neither expected, nor received any consideration or benefit. He did not intend to use the the Packard for any purpose, and it was not his duty to remove it from the public highway. Neither of the two men was the agent of the other, nor did they have an equal right to direct and control the movements and conduct of each other. Miller merely complied with the request of Hamrick for aid. The assistance given by Miller was nothing more than a social act of courtesy, strictly accommodational, not one of business or of community of interest, and agency does not arise out of such a relation. Cf. *Miller* v. *Ellis*, 188 Va. 207, 213, 49 S. E. 2d, 273, 276.

Applying the established rule to the undisputed facts, the trial court should have determined that Miller was not engaged in a joint enterprise, and it was error to submit the question to the jury. *Painter* v. *Lingon, supra*, 193 Va. page 845.

■ There is no statute in Virginia which prohibits the pushing of one car by another on the public highways of this State. No case involving that particular operation has been cited to us, nor have we found any.

Code of 1950, § 46-256,* as amended, Acts of Assembly, 1952, Chapter 671, page 1122, in effect at the time of the accident, applies to vehicles "stopped in such manner as to impede or render dangerous the use of the highway by others, except in the case of an emergency as the result of an accident or mechanical breakdown," in which case the disabled vehicle shall be removed from the highway as soon as reasonably possible. It does not apply to vehicles which are pushed or being pushed on the highway.

Pushing a disabled motor vehicle along a street, however, requires the exercise of the care which an ordinarily prudent person would exercise under existing conditions or circumstances, or commensurate with known or foreseeable dangers incident to the opera-

---

* "No vehicle shall be stopped in such manner as to impede or render dangerous the use of the highway by others, except in the case of an emergency as the result of an accident or mechanical breakdown, in which case the vehicle shall be removed from the highway as soon as possible; * * *."

This section was amended in 1958, Acts of Assembly, 1958, Chapter 541, page 742, and is now § 46.1-248, 1958 Replacement Volume, Code 1950. The amendment made no change pertinent to the issues in this case.

tion. Operating a car pushing another requires a high degree of skill. Power must be exercised carefully; brakes must be used quickly and accurately; steering is more difficult than usual; and the operator of the pushing vehicle is under a duty to know and give the signals required of the operator of a motor vehicle. Whether he exercises due care in a particular case is generally a question for the jury. Cf. 5 A Am. Jur., Automobiles and Highway Traffic, § 424. Pushing operations are not within the letter or spirit of the general statutory provisions regulating or prohibiting the stopping of motor vehicles or the removal of such vehicles from the highway, and the operator of the pushing vehicle is not subject to liability or negligence predicated alone upon the violation of a statute.

Instruction D-2, requested by the defendant, told the jury that if they believed from the evidence that the negligence of Hamrick was the sole proximate cause of the accident, then their verdict should be for the defendant. Instruction D-3 told the jury that even if they believed defendant was negligent, if they further believed "that an intervening act of negligence was the cause of the accident and not the negligence of the defendant," then they should find for the defendant.

The two instructions were in conflict with other instructions granted the plaintiff, in accordance with the conclusion of the trial court that the question of joint enterprise was for the jury. There is no question here raised as to the general principles of law stated in Instructions D-2 and D-3, under facts and circumstances justifying their application.

The trial court should have submitted to the jury the question whether, under the existing circumstances and conditions shown in the evidence, the defendant failed to exercise the care which was demanded of an ordinarily prudent person, and whether his negligence in that respect proximately caused or contributed to the injuries suffered by the plaintiff.

The judgment of the trial court is reversed; the verdict of the jury set aside; and the case remanded for a new trial in accordance with the views herein expressed.

*Reversed and remanded.*