854 F.2d 1317
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Roberson Eugene SULLINS, individually and as next friend of
Marc Sullins, Ruby Sullins, Plaintiffs-Appellants,
v.
Ryan STROTHER, Defendant-Appellee,
and
John J. Messick, Roderick Slayton, Esq., Committee of the
Estate of John J. Messick, Marsha Marie Souers,
GEICO, Defendants.
 No. 87-3657.
 United States Court of Appeals, Fourth Circuit.
 Argued May 4, 1988.
Decided Aug. 2, 1988.
 
 John F. Conroy (Kenneth J. Ingram, Sachs, Greenebaum & Tayler on brief) for appellants.
 Fred C. Alexander, Jr. (McGuire, Woods, Battle & Boothe on brief) for appellee.
 Before JAMES DICKSON PHILLIPS, MURNAGHAN, and ERVIN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Defendants John Messick and Ryan Strother rented a car together on March 1, 1985. The next morning, while driving alone, Messick had a head-on collision with the Sullins after he fell asleep at the wheel. The Sullins sued both Messick and Strother, but the district court granted a directed verdict in favor of Strother after the plaintiffs presented their evidence. The jury returned a verdict against Messick. The Sullins appeal the directed verdict. We affirm.
 
 
 2
 On March 1, 1985, Messick flew from Accokeek, Maryland, to Orange County, Virginia, where he got in touch with his friend Strother. They rented a Pontiac 6000 for a week from a local dealer in order for Messick to visit friends and meet a realtor the next morning. Because Messick was only twenty-one years old and lacked a valid driver's license, Strother executed the rental contract, but Messick paid for the car. The two agreed that Strother would accompany Messick and do all of the driving. For his trouble, Strother would get to use the car for the rest of the week and be paid $250.
 
 
 3
 That afternoon and evening, Strother drove Messick around the area to visit friends. Messick was tired, and complained of not feeling well at dinner. Strother left Messick at a motel with the rented car, and drove his own car home about 11:00 p.m. The next morning at about 8:00 o'clock, Messick decided to drive himself to his appointment when Strother was late returning to the motel. While driving, he fell asleep and collided with the Sullins.
 
 
 4
 The Sullins sued both Strother and Messick. The jury returned a verdict of $1,385,000 against Messick. The district court, however, directed a verdict in Strother's favor at the close of plaintiffs' case on both theories of liability--negligent entrustment and joint enterprise. The Sullins appeal the directed verdict and the court's refusal to grant a new trial.
 
 
 5
 Initially, we note that a trial court must make all reasonable inferences favorable to the party opposing a motion for a directed verdict. Richmond Television Corp. v. United States, 354 F.2d 410 (4th Cir.1965). On review, this court must consider the evidence in the light most favorable to the opposing party. Wyatt v. Interstate and Ocean Transport Co., 623 F.2d 888 (4th Cir.1980).
 
 
 6
 The Virginia law of negligent entrustment focuses on "whether the [defendant] knew, or had reasonable cause to know, that he was entrusting his motor vehicle to an unfit driver likely to cause injury to another." Laughlin v. Rose, 200 Va. 127, 104 S.E.2d 782, 787 (1958). The plaintiff must also show that the driver was negligent as a result of the unfitness and that negligence was the proximate cause of any injury. See Denby v. Davis, 212 Va. 836, 188 S.E.2d 226, 229 (1972).
 
 
 7
 The Sullins presented no evidence that Strother knew or should have known that Messick would be too tired to drive the car on the morning of March 2, eight or nine hours after he left him at a motel. The fact that Messick was tired the night before would not put anyone on notice that he would still be tired the next morning. The Sullins ask us to speculate that Strother and Messick drove around together all night because the Pontiac was driven some 400 miles between 3:00 p.m. when it was rented and 8:00 the next morning when the accident occurred. Without some positive testimony to create a reasonable inference, however, such speculation is not sufficient to defeat a motion for a directed verdict based on the notice element of negligent entrustment.
 
 
 8
 To be liable under a joint enterprise theory, "the parties must have a community of interest in the object and purpose of the undertaking, and an equal right to direct and govern the movements and conduct of each other in respect thereto." Alban Tractor Co. v. Sheffield, 220 Va. 861, 263 S.E.2d 67, 68 (1980); Miller v. Query, 201 Va. 193, 110 S.E.2d 198, 201 (1959). A common business purpose, see Alban Tractor, 263 S.E.2d at 69, or some kind of consideration or benefit creates a community of interest. See Miller, 110 S.E.2d at 201. Merely helping a friend does not. Id.; MacGregor v. Bradshaw, 193 Va. 787, 71 S.E.2d 361, 366 (1952). The "equal right to direct" element is analogous to agency principles--each party in a joint enterprise is an agent of the other. Alban Tractor, 263 S.E.2d at 68; Miller, 110 S.E.2d at 201.
 
 
 9
 It is arguable that a community of interest existed between Strother and Messick in the rental of the car. Although their ultimate purposes differed, they rented the car with the idea that both of them would benefit from the arrangement. There was not, however, an equal right to direct each other's conduct. While Strother was acting as Messick's chauffeur by driving him around the area, he had no control over Messick's conduct. He may have had legal control over the car, but he had none over Messick, particularly after leaving the car with him overnight. Therefore, a directed verdict was appropriate on the joint enterprise theory.
 
 
 10
 Viewing the evidence in the light most favorable to the Sullins, the district court properly granted a directed verdict in favor of Strother on both the negligent entrustment and joint enterprise theories of liability.
 
 
 11
 AFFIRMED.