# Staunton

ARTHUR LEONARD COOPER v. FRANK W. PICKETT.

September 2, 1960.

Record No. 5131.

Present, Eggleston, C. J., and Spratley, Buchanan, Miller, Snead, and I'Anson, JJ.

The opinion states the case.

*William Rosenberger, Jr.* (*Perrow & Rosenberger*, on brief), for the plaintiff in error.

*Paul Whitehead* and *E. Marshall Frost* (*J. Frank Shepherd*, on brief), for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

This case grows out of the automobile collision involved in *Pickett v. Cooper*, No. 5124, decided today, *ante* p. 60. It was brought by Frank W. Pickett, who was the driver of the automobile in which his wife, the plaintiff in No. 5124, was a passenger at the time of the collision. Both actions were against Arthur Leonard Cooper, the driver of the other car. The parties will be referred to as plaintiff and defendant, as they were in the trial court, or by their names.

The plaintiff's action was for damages for injuries suffered by him in the collision, and the defendant filed a cross-claim for damages for his injuries. In a jury trial the court struck out the defendant's evidence on his cross-claim and the jury returned a verdict for the plaintiff for $1,500 on his claim and a verdict in his favor on the defendant's cross-claim. Judgments were entered accordingly. We granted the defendant a writ of error and he here contends that he was not guilty of negligence, that the plaintiff was guilty of negligence, and that the court erred in refusing to give his Instructions E, H and K.

The defendant also assigned error to the refusal of the court to sustain his plea of *res judicata* and estoppel, based on the theory that in No. 5124, in which Mrs. Pickett was the plaintiff, it had been adjudicated that the defendant was not guilty of negligence. This assignment was abandoned at the oral argument, and in any event it was without merit. *Owen v. Dixon and Savage*, 162 Va. 601, 175 S. E. 41; *Byrum v. Ames and Webb, Inc.*, 196 Va. 597, 85 S. E. 2d 364.

The evidence in this case was substantially the same as in No. 5124, with an exception to be noted. As there stated, the collision occurred around 6:30 p.m., June 1, 1958, about midway of a long and steep hill on a straight section of U. S. 29, a two-lane road with a hard surface 20 feet wide and a wide shoulder on its west side. It was raining and the road was wet and slick. The evidence, as the jury had a right to accept it, was to the effect that the collision occurred in the following manner:

As Pickett was driving down the hill in the southbound lane, which was clear of traffic, at a speed of 40 to 45 miles an hour, there were three or four cars coming up the hill meeting him at about the same speed in the northbound lane. Cooper's car was last in the line and he

was running faster than those in front of him. When Pickett's car was somewhere between 75 and 200 feet away, Cooper pulled out into the southbound lane in an attempt to pass the cars in front of him. When Pickett saw him he said, "What is that fool trying to do?" Cooper tried to cut back into his northbound lane but the back end of his car swerved around and into the lane of the Pickett car. When Pickett saw him pull out, he applied his brakes and cut to his right toward the shoulder of the road, but the two cars were then close together, it all happened quickly, and the collision occurred. The left front of the Pickett car struck the left side of the Cooper car, ripped it away from the door to the rear, and Cooper's wife and children were thrown into the road. Pickett received injuries for which he sued. The Cooper car came to rest across the middle of the road and headed to the west. The main damage to the Pickett car was on its left front and it came to rest on the west shoulder of the road, a few feet south of the Cooper car, and headed back to the north. The left rear tire of the Cooper car was, a State trooper testified, "cut all to pieces".

At the time of the collision the plaintiff's car was on its proper side of the road and the defendant's car was on the wrong side and in the plaintiff's lane of travel. This put the defendant under the necessity of explaining why he was on the wrong side. *Pickett* v. *Cooper, ante* p. 60. This he undertook to do and claimed that he was not trying to pass the cars in front but that as he drove along at 30 to 35 miles an hour his left rear tire blew out and caused him to lose control of his car. He offered evidence to support his claim, including the testimony of an expert witness that the tire did blow out due to heat and before the casing was cut, but he could not say how long before. An expert witness for the plaintiff, however, who was not a witness on the other trial, testified that the break in the tire was due to the impact; *i.e.*, in effect, that the blowout of the tire was not the cause, but a result, of the collision.

Whether there was negligence on the part of the defendant which caused the collision was clearly a question for the jury to answer. *Cf. MacGregor* v. *Bradshaw*, 193 Va. 787, 71 S. E. 2d 361.

The defendant contends, on the other hand, that the plaintiff was guilty of negligence and that the court erred in refusing to submit that question to the jury and in striking out the defendant's cross-claim. The defendant could not, of course, maintain his cross-claim unless he proved that the plaintiff was guilty of negligence which

was the sole proximate cause of the accident. He bases his contention that the plaintiff was negligent on what he claims were admissions by the plaintiff shown by the following testimony:

The State trooper testified that in the hospital after the accident Pickett told him that as he rounded the curve on top of the hill and started downgrade that a car nosed out as if to pass the cars in front but dropped back in, then started out again and turned sideways, blocking or partially blocking his lane of travel; that he immediately applied his brakes and cut to his right as best he could "but they still hit".

The defendant testified that in the hospital next morning after the accident the plaintiff said to him, "I saw your car out of control and I thought you were going to get your car straightened up and under control and I think I might have stopped."

The defendant's wife testified that in the hospital next day after the accident the plaintiff said to her that "he had seen our car as he came over the hill; that he saw it was out of control and he saw my husband straighten the car up. He said had he known the car would not have stayed straightened up he would have stopped and gotten out of our way."

The plaintiff, on cross-examination, testified that when he remarked to his wife, "What is that fool trying to do?" he was but a short distance from him, he did not know how far. Asked if he did not testify in the other case that it was 150 to 200 feet, he replied, "I said it was approximately that, I imagine"; and he added that he put on his brakes as soon as he saw him, and he did not know whether it was a hundred feet or what it was.

The defendant argues that on this evidence the jury should have been allowed to decide whether the plaintiff used reasonable care in keeping a lookout and in operating his car under proper control and at a proper speed under the circumstances. The contention is answered not alone by the evidence for the plaintiff, but by the testimony of the defendant and his wife.

Mrs. Cooper testified "there was a slight noise as though from a firecracker and the car skidded and my husband brought it back under control and to his side of the road and then the car skidded out again and as I looked up it appeared to me that Mr. Pickett's car was headed to our rear window."

Mr. Cooper testified "I heard this noise and at the same time the car, the front end, went to the left. It pulled me in the left lane.

Well, I brought it back and it went out again and the second time it went out this car that was coming toward me was getting pretty close and I jerked the front end back to keep it from hitting head-on and that is when it caught the side door."

When it is remembered that when the defendant's car swerved into the plaintiff's lane, the plaintiff's car was traveling downhill at 40 to 45 miles an hour on a road that was wet and slick, and that the defendant's car was meeting him at a speed of at least 30 to 35 miles an hour, there was no basis on which the jury could have reasonably concluded from the evidence that the plaintiff was guilty of negligence which contributed to the accident. The court ruled correctly that there was no jury question on this point.

Instruction E, which the defendant offered and the court refused to give, would have told the jury that the defendant was not an insurer of the safety of the plaintiff, but was liable only for negligence which proximately caused the collision, and if he exercised reasonable care under the circumstances, they should find in his favor. It was, of course, not contended by the plaintiff that the defendant was an insurer and that part of the instruction was argument rather than relevant reference to the evidence. The defendant's duties were amply stated in at least three other instructions given for the defendant (in one more favorably than he was entitled to have it) and he was not harmed by the refusal of this one.

Defendant's instruction H stated that if ordinary care and diligence could not have prevented the collision, then it was unavoidable and the jury could not return a verdict in plaintiff's favor. This was no more than saying that if the defendant was not negligent then there was no liability on the defendant. That proposition was fully and better covered by other instructions.

Instruction K, the final one about the refusal of which the defendant complains, would have submitted to the jury the question of plaintiff's negligence. As we have stated, there was not sufficient evidence to go to the jury on that subject.

We find no reversible error and the judgment below is accordingly.

*Affirmed.*