# CIRCUIT COURT OF CHESTERFIELD COUNTY

Edwards

v.

Whitlock

February 4, 2002

Case Nos. CL01-339, CL01-340

BY JUDGE HERBERT C. GILL, JR.

The parties appeared before this Court, by counsel, on January 4, 2002, pursuant to various motions filed by both parties. Upon hearing argument by counsel for both parties, the Court proceeded to render decisions on all but two issues. All issues resolved or ruled upon ore-tenus have since been memorialized in separate orders. After dispensing with these issues in court, two remaining issues were taken under advisement pending further consideration by the Court. The two issues taken under advisement include:

(1) Defendant's Motion to Strike the Jury Demand as to Punitive Damages.

(2) Defendant's Motion in Limine to Exclude Evidence of Insurance Available to the Defendant.

The Court has reviewed the legal memoranda and case law provided by counsel for both parties and now rules as follows.

## I. *Defendant's Motion to Strike the Jury Demand as to Punitive Damages*

The plaintiff is seeking an award of punitive damages against the defendant and has specially requested in the Motion for Judgment that the claim for punitive damages pursuant to Virginia Code § 8.01-44.5, along with all other claims alleged, be decided by a jury. The defendant filed a Motion to

Strike the Jury Demand as to Punitive Damages arguing that the decision of the U.S. Supreme Court in *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, among other federal and state appellate court decisions, supports the notion that an award of punitive damages is a conclusion of law to be decided by the Court rather than a factual determination to be determined by a jury and, therefore, the plaintiff's right to a jury trial, as provided by the Seventh Amendment, will not be violated by removing the issue of punitive damages from the province of the jury. *Cooper Industries, Inc. v. Leatherman Tool Group, Inc.*, 532 U.S. 424, 121 S. Ct. 1678 (2001). In reliance upon this proposition, the defendant urges that the plaintiff's request for a jury trial be denied to the extent that the plaintiff seeks the jury to consider an award of punitive damages and, in addition, that the plaintiff not be permitted to introduce any evidence of the defendant's punitive conduct before the jury.

This Court is not inclined to interpret *Leatherman* and similar appellate cases cited by the defendant so broadly. In *Leatherman*, for example, the Court considered the issue of whether the Court of Appeals reviewed the constitutionality of the punitive damages award under the correct standard and whether the award violated criteria articulated by the Court in *BMW of North Am., Inc. v. Gore*. *Id.* at 1684-85, referencing *BMW of North Am., Inc. v. Gore*, 517 U.S. 559. In *Gore*, the Court's ruling prohibited states from imposing grossly excessive punishments for tortfeasors. In deciding whether the constitutional line has been crossed, the Court should focus on the following three criteria; (1) the degree of the defendant's reprehensibility or culpability, (2) the relationship between the penalty and the harm to the victim caused by the defendant's actions, and (3) the sanctions imposed in other cases for comparable misconduct.

The *Leatherman* Court noted that, if no constitutional issue is raised, the appellate court need merely review the trial court's determination under an abuse of discretion standard. However, the Eighth Amendment's prohibition against excessive fines and unusual punishments applies to the states by way of the Fourteenth Amendment's Due Process Clause. When deciding, *on review*, whether this *constitutional* line has been crossed, the *reviewing* court will look to the three criteria provided by *Gore*. The *Leatherman* Court recognized that an examination of these criteria necessitates, due to their nature, a case-by-case, independent review and that *de novo* review "tends to unify precedent and stabilize the law." *Id.* Accordingly, the Court held that *review* of *constitutional* issues regarding awards (such as a challenge based upon an award being excessive in violation of the Eighth Amendment) should be reviewed *de novo*, not upon the abuse of discretion standard used in the absence of a constitutional issue. *Id.* at 1683.

At no time did the *Leatherman* Court hold that the Eighth Amendment is violated by the fact that a jury, rather than the Court, is allowed to consider an award of punitive damages. In fact, this Court is hard pressed to locate, in the opinion, so much as an inference that punitive damages should be removed from the province of the jury. Rather, the *Leatherman* Court merely makes mention of a jury's consideration of punitive damages as often, and as matter-of-factly, as is necessary to adequately address the real issue of the case, that of the appropriate standard of review on appeal when a constitutional issue is raised.[1]

Moreover, the *Leatherman* decision does not support the proposition that since an award of punitive damages is a matter of law, the plaintiff in a civil action does not have a right to a jury trial with respect to this issue. What the *Leatherman* Court *did* say is that, because a "jury's award of punitive damages is not a finding of 'fact,' *appellate review* of the District Court's determination *that an award is consistent with due process* does not implicate the Seventh Amendment concerns raised by Leatherman." *Id.*

It is important to note that the *Leatherman* Court *did* recognize that states possess broad discretion with respect to the imposition of criminal penalties and punitive damages. *Id.* at 1684. This broad discretion is limited by the Due Process Clause of the Fourteenth Amendment, which makes the Eighth Amendment's prohibition against excessive fines and cruel and unusual punishments applicable to the states. In addition, the court noted that the Due Process Clause "of its own force also prohibits the states from imposing 'grossly excessive' punishments on tortfeasors." *Id.*, citing *Gore* at 562. Aside from these limitations, however, there is nothing barring jury awards of punitive damages. Therefore, the General Assembly of Virginia was free to enact the provisions of Virginia Code § 8.01-44.5.

---

[1]  *Id.* at 1683-84. "A good many states have enacted statutes that place limits on the permissible size of punitive damage awards. When juries make particular awards within those limits, the role of the trial judge is to determine whether the jury's verdict is within the confines set by state law, and to determine, by reference to the federal standards developed under Rule 59, whether a new trial or remittitur should be ordered." *Id.* at 1686. "Because the jury's award of punitive damages does not constitute a finding of 'fact,' appellate review of the District Court's determination that an award is consistent with due process does not implicate the Seventh Amendment concerns raised by the respondent." *Id.* at 1687. "However attractive such an approach to punitive damages might be as an abstract policy matter, it is clear that juries do not normally engage in such a finely tuned exercise of deterrence calibration when awarding punitive damages."

Accordingly, the Court hereby denies Defendant's Motion to Strike the Jury Demand as to Punitive Damages. If, after the conclusion of the trial, counsel for the defendant is of the opinion that the jury's award of punitive damages, if any, is unconstitutionally excessive, the defendant may then see fit to wipe the dust off the *Leatherman* case and argue that the standard of review should be *de novo* as opposed to abuse of discretion.

As an aside, it is worthy to note that the Supreme Court of Virginia has adopted a standard of appellate review in regard to punitive damages that satisfies the more recent holding of the U.S. Supreme Court in *Leatherman*. In *Poulston v. Rock*, the Court held:

> [I]n reviewing the order of a trial court imposing or refusing to impose remittitur … we shall make an independent examination of the entire record to determine whether the trial court acted properly … we will give substantial weight to the trial court's action, unless, from our review of the record, the trial court acted improperly.

*Allman v. Allman*, 2001 Va. Cir. LEXIS 124, 9, citing *Poulston v. Rock*, 251 Va. 254, 263 (1996).

## II. *Defendant's Motion in Limine to Exclude Evidence of Insurance Available to the Defendant*

In anticipation that the plaintiff will attempt to offer evidence that the defendant has insurance coverage to pay for any punitive damage award against him, the defendant has filed a Motion in Limine to Exclude Evidence of Insurance Available to the Defendant.

Counsel for plaintiff desires to inform the jury that the defendant has an "asset" worth $750,000. This "asset" is in the form of an insurance policy. Counsel for defendant argues that any such evidence of the insurance amounts to an inadmissible reference to insurance coverage and, that while the defendant's *net worth* is relevant in determining punitive damages, the existence of insurance coverage is not an "asset" used in calculating net worth.

The Court agrees. First, as the Supreme Court of Virginia noted in *Speet v. Bacaj*, "It has been a long-standing rule in Virginia that, in a personal injury action, any comment deliberately made to inform the jury that a defendant is insured against the accident constitutes reversible error." *Speet v.*

*Bacaj*, 237 Va. 290, 293-94 (1989), citing *Rhinehart & Dennis Co. v. Brown*, 137 Va. 670 (1923).

Secondly, the plaintiff cannot maneuver around this prohibition by simply labeling the coverage as an "asset" and thereby avoiding the actual utterance of the word "insurance." Regardless of what label is applied, it is still a "comment deliberately made to inform the jury that the defendant is insured." *Id.* at 293-94. "Evidence of insurance is irrelevant and inadmissible in an action against a defendant for negligent injury." *Rhinehart & Dennis Co. v. Brown*, 137 Va. 670, 675 (1923). Reference to the $750,000, regardless of the label given it, amounts to such evidence of insurance. Accordingly, the Court agrees with counsel for the defendant that, whether called insurance or not, informing the jury of the existence of the $750,000 will impermissibly inject insurance coverage into the case.

In any event, the Court finds that the insurance coverage should not be considered as an "asset" in determining the defendant's net worth for the purpose of punitive damages. In assessing punitive damages, evidence of the "financial standing" or "financial condition" of the defendant may be considered by the jury. *Weatherford v. Birchett*, 158 Va. 741, 747 (1932); *Hamilton Devel. Co. v. Broad Rock Club, Inc.*, 248 Va. 40, 44 (1994). Although there is no Virginia case directly addressing this particular issue, the Court does not accept the proposition that the Supreme Court of Virginia intended that the "financial standing" or "financial condition" of the defendant should include insurance coverage. To accept this interpretation would mean that our Supreme Court has made a significant exception to the long-standing prohibition against informing the jury of insurance coverage, an exception to be applied in all cases involving punitive damages. The Court does not accept this interpretation.

The plaintiff's most persuasive argument is that evidence of the insurance coverage should at least be admissible for the sole purpose of rebutting defendant's claims of poverty. Counsel for plaintiff cites cases from a number of other jurisdictions where the courts have allowed evidence of insurance to rebut claims of poverty. In *Wheeler v. Murphy*, the Supreme Court of Appeals of West Virginia stated the following:

> The financial status of [the defendant] is proper for the jury to consider when deliberating the punitive damage issue. When [the defendant] chose to offer the evidence of his low income and minimal assets, plaintiff's counsel was entitled to elicit evidence on rebuttal to counteract the impression that [the defendant] would be unable to satisfy a large punitive damage award. The plaintiff should have been permitted to introduce the evidence of [the defendant's]

liability insurance in order fully to explain the defendant's financial status to the jury.

*Wheeler v. Murphy*, 452 S.E.2d 416, 425-26 (W. Va. 1994).

Another example cited by the plaintiff is the case of *Hall v. Wal-Mart Stores, Inc.*, where the Supreme Court of Utah noted that a defendant "should not be permitted to plead poverty where he has an insurance policy which covers an award of punitive damages." *Hall v. Wal-Mart Stores, Inc.*, 959 P.2d 109, 113, n. 7 (Utah 1998). Similar decisions from a variety of jurisdictions are cited by the plaintiff.

Although these foreign cases support the proposition that fairness demands that evidence of insurance coverage be allowed to rebut claims of poverty, the Virginia Supreme Court has not addressed the issue *directly*. The Supreme Court of Virginia did come close, however, in *Macgregor v. Bradshaw*, 193 Va. 787 (1952). In *Macgregor*, counsel for the defendant, during closing argument, stated, "how in the name of High Heaven under this evidence can you say which of these two young men's estates is going to pay that compensation. If you guess wrong, you have hurt that estate." *Id.* at 794. In response to this remark, counsel for the plaintiff declared, "I can say to you here that neither of these estates will be hurt one iota, one penny, if you render a verdict for the plaintiff." *Id.* In ruling that the trial court's refusal to declare a mistrial was proper, the Court noted that the argument of plaintiff's counsel was "provoked and invited by the like argument of counsel for the defendant, and hence the defendants are in no position to complain." *Id.* at 795.

The issue before us, however, is distinguishable from that decided by the Court in *Macgregor*. In *Macgregor*, counsel for the defendant deliberately *misled* the jury into thinking that an award of punitive damages would be paid directly from the pockets of the defendant. Here, however, the issue presented to the Court is whether the defendant should be allowed to merely present truthful evidence of poverty for the jury's consideration of punitive damages without being penalized by the mention of insurance. The Court finds that the defendant cannot, and should not, be penalized for presenting truthful evidence of his "financial condition."

As mentioned above, the Supreme Court of Virginia has held that "[e]vidence of the financial condition of a defendant is *relevant* on the issue of punitive damages and *properly may be considered by the jury*." *Hamilton*, at 44. We assume, of course, for the purpose of deciding this issue, that any representations made will be truthful. So long as the defendant does not take an *additional* step and *mislead* the jury into believing that, due to his poverty, he will be unable to pay an award of punitive damages, *there is nothing*

*wrong with merely providing the jury with an accurate assessment of his "financial condition."* Surely, in the case of a wealthy defendant, the plaintiff is permitted to offer evidence of the defendant's prosperous financial condition. The same opportunity, therefore, should not be curtailed as to defendants who wish to present evidence of their impoverished financial condition. This, however, is precisely what counsel for the plaintiff is asking the Court to do. *If evidence of the defendant's financial condition is relevant on the issue of punitive damages, it must be equally relevant, and pass without penalty, regardless of what the state of that financial condition is.* To rule otherwise would be to encourage plaintiff's attorneys to reveal the financial condition of wealthy defendants while discouraging defense attorneys from revealing the financial condition of impoverished defendants. This result would contravene the Virginia Supreme Court's decision in *Hamilton Devel. Co. v. Broad Rock Club*, in which the Court held that factual evidence of the defendant's financial condition is relevant in determining punitive damages.

The difference between the existing precedent in Virginia and the foreign cases cited by the plaintiff is small but significant. In Virginia, it appears the plaintiff may suggest the existence of insurance coverage only to rebut statements by the defendant that mislead the jury into believing that the defendant will have to pay the punitive damage award out of his own pocket. In fact, it should be noted that the comment allowed in *Macgregor* was not a direct mention of insurance. Rather, it was merely a vague suggestion of the existence of insurance that served to balance out the false statements made by the defendant's counsel. In the jurisdictions cited by the plaintiff, however, the plaintiff may put on such rebuttal evidence of insurance coverage if the defendant merely puts on evidence of poverty, no matter how truthful that evidence may be and without any additional claims that the defendant will be unable to pay. The plaintiff is now asking this Court to take the leap from the existing Virginia precedent to that of the jurisdictions cited. The Court would be ill-advised to make such a leap today. To take such a leap would contravene the ruling of the Supreme Court in *Hamilton Devel. Co. v. Broad Rock Club*, in which the Court ruled that evidence of the defendant's financial condition is relevant on the issue of punitive damages. Unless counsel for the defendant falsely suggests to the jury that the defendant will have to pay an award out of his own pocket, the plaintiff may not so much as infer that insurance coverage exists.

### III. *Conclusion*

For the reasons stated, the Court hereby makes the following rulings:

1. The defendant's Motion to Strike the Jury Demand as to Punitive Damages is hereby denied.

2. The defendant's Motion in Limine to Exclude Evidence of Insurance Available to the Defendant is hereby granted.